**Joseph B. SANCHEZ, Plaintiff-Appellant,**

v.

**The DENVER & RIO GRANDE WEST-ERN RAILROAD COMPANY, Defendant-Appellee.**

**No. 74–1847.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 26, 1976.

Decided July 22, 1976.

John A. Criswell and John N. McNamara, Jr., Criswell, Patterson & Ballantine, Engle-wood, Colo. (Morrisard & Rossi, Aurora, Colo., with him on the brief), for plaintiff-appellant.

Charles W. Johnson, Denver, Colo., for defendant-appellee.

Before LEWIS, Chief Judge and BREIT-ENSTEIN and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

This is an action brought by plaintiff under the Federal Employer's Liability Act against the defendant railroad for personal injuries sustained by him during the course of his employment. The accident occurred when a 1000-pound door being removed from the interior of a railroad boxcar by Sanchez and two other employees fell on Sanchez. The case was presented to a jury and resulted in a judgment favoring plaintiff in the amount of $93,750 reflecting a jury assessment of plaintiff's total damage at $125,000 reduced by a finding that plaintiff was comparatively negligent to the extent of 25 percent. Plaintiff appeals, alleging two prejudicial rulings by the trial court affecting the element of damages. Each such ruling was made early in the proceedings in anticipation of later evidentiary problems and was inflexibly adhered to during the course of the trial.

The first ruling subject to appellate complaint pertains to expert testimony regarding the present worth of Sanchez' loss of anticipated earnings during his work life. The trial court indicated that plaintiff's expert economist must either consider the impact of federal and state income taxes on net loss of earnings in his direct testimony or be prepared to consider such impact on cross-examination. Plaintiff's expert witness accordingly testified on direct examination that the present worth of plaintiff's loss of earnings was $400,000 and when reduced by probable tax impact was $320,000. This testimony was the only evidence probing this aspect of the case.

■ In the present posture of the case the defendant does not complain of the many assumptions made by the expert witness in arriving at his conclusions and the plaintiff cannot so complain except as to the consideration of tax impact. The many complexities noted by Judge Friendly's opinion in *McWeeney v. New York, N.H. & H.R.R.*, 2 Cir., 282 F.2d 34, *cert. denied*, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93, and further complicated and confounded by a multitude of subsequent cases within the circuits, although argued and presented to us in briefs, are not here pertinent. The single issue is whether the court erred in insisting that the tax impact be considered by the expert, not the broad question of the acceptability of the expert's total approach.

The trial court premised its ruling and its firmness, and properly so, on *United States v. Sommers*, 10 Cir., 351 F.2d 354, in which this court approved consideration of future tax impact in a wrongful death case stating:

Undoubtedly situations may arise in which the failure to take into account income tax liability would produce an unconscionable result, and conversely a similar result could be obtained if too great a deduction were applied. When dealing with such an imprecise and speculative subject, the best that can be hoped for is reasonableness. It is a determination best left to the exercise of sound discretion of the trial Judge, whether with or without a jury.

*Id.* at 360. *Sommers* and the case at bar have several parallels for the facts in both cases clearly indicate a probable tax impact but are highly uncertain as to the amount of such impact. This uncertainty is compounded in the present case since plaintiff was 19, unmarried, and earning $8,300 annually with a very long statistical work life. The court's ruling was well within its discretion. Moreover, the verdict in this case seems to in no way reflect jury reliance on the expert's testimony whether considered with or without the impact of future taxes.

■ The second ruling of the trial court asserted to have had prejudicial and erroneous effect concerns a motion picture reenactment of the accident filmed by the defendant railroad with live persons including one person purporting to portray plaintiff and to stage his actions. During discovery proceedings the court ordered the railroad to make the motion picture available for inspection but also stated that "plaintiff shall not be allowed to use these movies as

evidence on his behalf at trial." The trial judge extended the ruling of his fellow judge to the evidentiary level even though a print of the movie was furnished to plaintiff and the film was listed as a possible exhibit in defendant's pretrial statement.

■ Although the record is far from clear, the premise underlying the dual rulings prohibiting the plaintiff from using the subject picture as evidence appears to be a classification of the film as the work product of the defendant. We cannot give support to this premise and can give even less comfort to counsel's argumentative claim that the production was made as an aid in attempting to induce a favorable settlement for the railroad. The film bears every indicia of being prepared as a demonstrative evidentiary aid, was listed as a possible exhibit by the railroad, and, assuming a proper foundation,[1] could probably have been effectively used by one party or the other. The railroad chose not to use the film, however, and the plaintiff was prohibited from so doing by the continuing rulings of the court effectively chilling any effort by plaintiff in this area. We thus summarily reject the railroad's contention that the claim of error should not be considered because plaintiff failed to establish, in the record, an adequate foundation of accuracy.

In addition, counsel for the railroad added to the prejudicial effect of the trial court's rulings by referring to the motion picture during examination of his own witness. A defense witness testified that it was quite possible to get the door out of the boxcar. Counsel buttressed this statement by referring to the "movies of door removal" with the following question and answer:

Q. And in fact didn't we prove it after the accident?

A. Yes, sir.

Plaintiff's attempt to cross-examine the witness was quickly curtailed by the court. We hold, therefore, that under the total circumstances the trial court committed error in this area.

We agree, however, with the contention of the railroad that error in regard to the subject motion picture could have no greater impact than to invalidate the jury finding relating to comparative negligence and that the error will be cured by reinstating the jury's total verdict on damages in the sum of $125,000. We so hold.

The case is remanded to the district court with instructions to enter judgment in favor of plaintiff in the amount of $125,000. The judgment is otherwise affirmed.

---

1. Motion pictures are, of course, admissible in evidence and are notably effective in many instances. However, such exhibits must be premised by a foundation of accuracy and fairness. Where, as here, motion pictures purport to represent a reenactment of human conduct the court should scrutinize the foundation with great care as to detail. For example, had the subject motion picture portrayed the plaintiff entering his position of peril with a look of alarm on the face of his stand-in the film should be rejected as corrupt even though otherwise accurate.