**Larry J. BRANDT, Plaintiff-Appellant,**

v.

**Marvin W. FRENCH,
Defendant-Appellee.**

**No. 79–1514.**

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 20, 1980.
Decided Jan. 8, 1981.

William A. Wieland, Healey, Brown, Wieland & Kluender, Lincoln, Neb., for plaintiff-appellant.

Paul B. Godfrey, Godfrey & Sundahl, Cheyenne, Wyo., for defendant-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this diversity case the plaintiff seeks review and reversal of a judgment of the district court denying relief for injuries suffered as a result of a collision which he had with an automobile, while riding his motorcycle. This occurred in Wyoming during the late summer of 1977. Plaintiff-appellant had traveled alone by motorcycle through the northwest United States and Canada on a vacation. On the return trip he was traveling through Sheridan, Wyoming on his way to Lincoln, Nebraska when the accident happened.

Brandt was an experienced motorcyclist who at the time was driving a Harley-Davidson touring machine. He had ridden a motorcycle for approximately 60,000 miles of traveling.

His job is that of an electronics repairman at a Lincoln, Nebraska television sta-

tion. Brandt had owned the motorcycle he was riding at the time of the accident since July 1977. This machine had 9,000 miles on it.

In order to satisfy the warranty which the seller had given with the machine, it was necessary to change the oil periodically and that time occurred just prior to the accident while appellant was at Sheridan, Wyoming. He decided to stop at the local Harley-Davidson shop for the oil change and he obtained directions as to how to get there. He was heading down Highway 87 and thought that he had probably missed the left turn which would take him to the shop.

The individual who was driving the *car* was Marvin French, who was a 17 year old high school student. On the afternoon of the accident French, together with two other friends stopped at French's father's service station to get gas before heading off to get one of the other boy's football equipment prior to going to practice. The three testified that they were aware of the motorcycle passing them on the highway as they were getting the gas. After filling up the tank the boys drove down the highway within the speed limit and caught up to Brandt who was slowing down and pulling to the right of the highway. French may have thought Brandt was stopping and he, French, pulled over to the left of the lane to pass. He was then driving 35 to 40 miles per hour. Brandt did not stop completely before swinging to the left into the path of French's car. French slammed on the brakes but it was unavailing.

There is a possibility that Brandt was unaware of the French car and attempted to make what he thought was a safe U-turn to go back to the road to the Harley-Davidson shop. There is little dispute in the testimony except that some of the documentary evidence suggests possible exaggeration.

The contention of Brandt is that the trial court erred in allowing the expert called on by appellee to testify. This man's name was Fay and he operated an engineering firm which specialized in accident reconstruction. He used facts such as vehicle mass; direction of skid marks; dimensions of vehicles involved; dents, breaks and paint transfers of the vehicles; road surface textures; and physics principles of mechanics such as inertia, velocity, coefficients of friction, and operating characteristics of vehicles (in this case, including how much a motorcycle must lean at various speeds to make turns), from which the expert claimed to be able to give an accurate picture of the sequence of events immediately preceding the accident. The expert opined that the French vehicle was doing 37 miles per hour and the Brandt motorcycle was going 8 miles per hour. It was said also that the brakes of the French vehicle were applied an instant before impact and that on impact the axis of Brandt's motorcycle was "60 degrees to the center line of the road, which means that the motorcycle was, in fact, crossing the lane of travel."

The testimony of Mr. Fay was detailed and was supported by color photographic displays, a short film and projected slides. It was these three exhibits that produced the dispute that Brandt relies on in Mr. Fay's analysis. The objection that Brandt makes to the photographs is that they do not properly depict what occurred. The photographs are of stationary objects and they do not depict the motion of the vehicle and the motorcycle therefore they are irrelevant. In order to depress the front of the vehicle as would tend to occur in braking, Mr. Fay requested that a person sit on the front fender. Brandt objected to the appearance of this man sitting on the fender contending that it was overly prejudicial so as to suggest to the jury that Brandt was a "hells angel" type.

The film illustrates various angles at which a motorcycle in motion at various speeds on a parking lot would lean and the radius of curve resulting from such leans. In the film the automobile used is stationary. Brandt objects that this film fails to

illustrate the facts and is not a proper experiment because the automobile is not moving and there is no way to judge the speed of the motorcycle. Another objection is that the pavement of the parking lot where the film was shot was not similar to the gravel shoulder where the turns, according to the expert's opinion, would have had to have been started if they were to represent what happened at the scene of the accident.

A series of slides represents an extrapolation from the theoretical position and velocities of the vehicles at impact back to a fraction of a second before the accident. The slides, according to Mr. Fay, show that Mr. Brandt must have gone off the pavement to the right just before swinging to the left. The objection to the information which was obtained from the slides is that two eye witnesses and, arguably the defendant himself, did not testify to the facts as shown by the expert, i. e. that Brandt left the road pavement to the right just before swinging left. Brandt contends that this point is crucial to his case because if Brandt did leave the pavement, then the Wyoming statutes would shift the right of way from Brandt to French. If Brandt did not leave the pavement he would have the right to an unimpeded full use of the lane width.

The main objection to the testimony of the expert is that he did not work with reference to the facts that were brought out at the trial. In other words he formed hypothetical conclusions which, it is argued, were merely speculation and were therefore prejudicial.

The underlying principle applicable to expert testimony is that it is left largely to the discretion of the trial court and it is not overturned in the absence of an abuse of discretion. *Grayson v. Williams*, 256 F.2d 61 (10th Cir. 1958); *Navajo Freight Lines v. Mahaffy*, 174 F.2d 305 (10th Cir. 1949).

■ Admissions of evidence of experiments must be established by showing background proof that the experiments were conducted under conditions that were at least similar to those which existed at the time of the accident. Demonstrations of experiments used to merely illustrate the principles in forming an expert opinion do not require strict adherence to the facts. It is important in that situation, however, that it be made clear to the jury that even though there is not similarity to the events of the accident that the information is received on a theoretical basis for the limited purpose for which it is offered. *Hankins v. Ford Motor Co.*, 437 F.2d 276 (3rd Cir. 1970); *Miller's National Insurance Co. v. Wichita Flour Mills Co.*, 257 F.2d 93 (10th Cir. 1958). Where photographs, films and slides are used to demonstrate the experiment, care must be used to point out that they are representative only of what the witness is seeking to establish and they must not be misleading in and of themselves.

This court has held that the admission of films as evidence must be carefully weighed because of the highly persuasive nature of films. *See Sanchez v. Denver and Rio Grand W. RR. Co.*, 538 F.2d 304 (10th Cir. 1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). The trial judge should review the film outside of the jury's hearing.

■ In the present case the judge did not review the film prior to its being shown to the jury. Nevertheless, from the record it appears the film could have been shown anyway, so any error is harmless. The film merely shows a motorcycle passing in front of a car several times from different angles and different speeds so as to illustrate the angles of "lean" and radii for turns from different positions. The content of the film was not meant to depict the actual event of the accident but rather to show mechanical principles relative to two vehicles, namely how a motorcycle leans when it turns, for example. *See, Young v. Illinois Central Gulf R. Co.*, 618 F.2d 332, 337 (5th Cir. 1980). The same observations could be

made with respect to the other photographic exhibits which were used by the expert.

■ We turn to the slides which represent the immediately preceding positions of the vehicles. These are a visual summation of the expert's opinion. They were overhead shots of the accident scene with small model vehicles in various stages of proximity based on the expert's calculations from the evidence that was before the court. The representation was carefully drawn and executed and it is not contended that it misrepresents the theory of the expert. Instead, it is argued that the theory is speculative and not supported by a proper foundation thereby making the further step of putting the speculation on slides even more prejudicial. But from a viewing of the slides they are merely a visual representation of the theory and as such admissibility of them is within the discretion of the trial court. The foundation, reasons and calculations were detailed on direct examination and they included length and direction changes and skid marks of both vehicles, road surface characteristics, mass of both vehicles, and operating characteristics of both vehicles. The pieces of evidence were there for all to see and the expert applied principles of mechanics to put them all together. The jury was instructed to give the expert's testimony the weight and credit which they thought it was entitled to receive under all the circumstances of the case. The court left it for the jury to determine whether Brandt had or had not left the paved surface of the road. The appellant argued strenuously that the expert witness' assistant, who is shown in the photographs, was depicted as a "hells angel" type. Regardless of the possibility that the jury might draw such inference, counsel made it abundantly clear in cross examination that the expert was not intending any suggestion that such an appearance might make as to the character of the plaintiff. If the purpose was valid, it is strange that the photographs do show the black leather jacket and other appurtenances of a motorcyclist who perhaps creates prejudice.

Some of the issues that are presented are not dissimilar from those which are considered in *Miller's National Insurance Co. v. Wichita Flour Mills Co., supra.* In that case the court dealt with the structural failure of a grain elevator and the battle of experts over the cause. The lengthy discussion in that case is certainly parallel and similar to that which is here presented.

Further support for this court's holding is found in Rule 702 of the Fed.R.Evid. which provides:

> "If scientific, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

In the Notes of Advisory Committee on Proposed Rules, "The use of opinions is not abolished by the rule, however. It will continue to be permissible for the expert to take the further step of suggesting the inference which should be drawn from applying the specialized knowledge of the facts."

■ Appellant vigorously objects to refusal of instructions which were tendered by his counsel. The first of these is as follows: "You are instructed that the driver of a motor vehicle approaching from behind without warning may not rely on the motorcycle remaining at a specific distance from the edge of the road." The jury was instructed instead,

> "All motorcycles are entitled to full use of a lane and no motor vehicle shall be driven in such manner as to deprive any motorcycle of the full use of the lane."

The second instruction which was requested reads: "You are instructed that a safe distance at which an automobile should pass a motorcycle from the rear depends on circumstances and variations from perfectly straight driving or riding may be anticipa-

ted from ordinarily careful persons." In response to this the court instructed:

"The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle."

 The instructions which were given were derived from the statutes and it is difficult to see the substantial differences between the requested and the given instructions. It is well settled and one cannot complain that exact wording of the requested instructions is not given as long as the subject matter is substantially observed. *Commercial Iron and Metal Co. v. Bache Halsey Stuart, Inc.*, 581 F.2d 246 (10th Cir.), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1978); *McGrath v. Wallace Murray Corp.*, 496 F.2d 299 (10th Cir. 1974).

The Wyoming law which governs in this diversity case follows the doctrine of comparative negligence. Acting in accordance with the law the jury found that both parties were equally negligent. This determination is tantamount to a finding of fact. Moreover, the basic physical facts show that plaintiff turned his motorcycle and headed to the center of the highway in the face of an on-coming motor vehicle. It cannot be said that there was insufficient evidence to support the jury's findings.

We have concluded that the case was error free and we are powerless to disturb the findings of the jury.

We affirm.