Clifford R. BANNISTER,
Plaintiff-Appellee,

v.

TOWN OF NOBLE, OKLAHOMA,
Defendant-Appellant.

No. 84–1433.

United States Court of Appeals,
Tenth Circuit.

Feb. 25, 1987.

John R. Couch and Stephanie J. Mather of Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, Okl. (Terry Guy Shipley, Noble, Oklahoma, with them on briefs), for defendant-appellant.

John M. Merritt of Merritt, Rooney & Hayden, Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY, SEYMOUR, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

In this appeal we review a jury verdict for Bannister, a Texas resident, in a diversity suit alleging negligence against the Town of Noble, Oklahoma, for personal injuries arising out of a one-car accident which occurred in Oklahoma. The center line of the county road on which the accident occurred divides Norman, Oklahoma, from Noble, Oklahoma. Cleveland County performs all road maintenance on the portion of this road that lies within Norman and Noble. Bannister was driving on the Noble side of the road when he crested a hill and saw a dump truck parked in his lane and road crew workers filling potholes. To avoid hitting the truck, he steered across the center line into the oncoming lane which was free from traffic. As he did so, a road crew worker stepped over the center line into the path of Bannister's car and Bannister swerved off the road. Bannister was severely injured and is now a paraplegic. Bannister sued claiming negligence by Norman and Noble in breaching their duty to maintain the road or to warn motorists of the truck and workers obstructing traffic. At trial the jury found that Bannister was thirty-five percent contributorily negligent and that Norman and Noble were sixty-five percent negligent.

Noble appeals [1] alleging that the district court erred in (1) admitting several videotapes into evidence, (2) submitting the issue of proximate cause to the jury, and (3) giving conflicting jury instructions. Noble also alleges that it was reversible error to allow certain character evidence and certain instances of misconduct by Bannister's attorney.

## I.

Noble contends that the question of proximate cause should have been decided as a matter of law and the district court erred in submitting the question to the jury. Noble argues that the parked dump truck was a condition and that the proximate cause of the accident was the negligence of the road crew worker who stepped over the center line into the path of Bannister's automobile. In other words, Noble maintains that, as a matter of law, the superseding cause of Bannister's injuries was the intervening negligence of the road crew worker who was standing on the Norman side of the road when Bannister swerved off the road, and thus Norman rather than Noble is liable for the injuries.

■ First, as a general rule, the question of proximate cause in a negligence case is one of fact for the jury. *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 263 (Okla.1982). "[T]he proximate cause of an injury is a question of fact and only becomes a question of law where the evidence together with all inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury." *Gates v. United States*, 707 F.2d 1141, 1145 (10th Cir.1983) (quoting *Smith v. Davis*, 430 P.2d 799, 800 (Okla.1967)); *see also Sturdevant v. Kent*, 322 P.2d 408, 409–10 (Okla.1958) (if the facts regarding proximate cause are such that all reasonable men must draw the same conclusion, the question is one for the court).

Second, "[n]ot every intervening cause will insulate the original negligent actor from liability." *Thompson*, 652 P.2d at 264. "If a causal factor is capable of combining or acting in concert with another act or omission to produce the injury, each negligent actor will be subject to liability for the harm that evolves." *Id.* "Where there is a question as to whether an intervening act is the proximate cause of an injury to the exclusion of a prior wrongful act alleged to have merely created a condition, the question is ordinarily one of fact for determination by a jury." *Metropolitan Paving Co. v. Puckett*, 389 F.2d 1, 4

1. Norman also appealed, but settled with Bannister prior to oral argument. This court dismissed Norman's appeal. Farmers Alliance Insurance Co., the insurer for Cleveland County, settled with Bannister before trial.

(10th Cir.1968) (citations omitted) (applying Oklahoma law).

In the present case, the district court determined that there was sufficient evidence to submit the issue of proximate cause to the jury. Whether there is sufficient evidence to create a question for the jury is a question of federal law. *Martin v. Unit Rig & Equip. Co.*, 715 F.2d 1434, 1438 (10th Cir.1983). *See also Sharon Steel Corp. v. Lakeshore, Inc.*, 753 F.2d 851, 853–54 (10th Cir.1985). We have examined the evidence in view of the standards set forth in *Martin.* We conclude that there was sufficient evidence to submit the issue of proximate cause to the jury.

## II.

Noble next argues that the district court erred in giving conflicting jury instructions. The first instruction states:

A municipality has the duty to use ordinary care to construct and maintain its streets in a reasonably safe condition for usual and ordinary use or to use ordinary care to adequately warn of any dangerous condition of which the municipality knows or reasonably should know in sufficient time to have removed or corrected the condition or have given adequate warning of its existence.

If you find that Etowah Road was in a dangerous condition and that the municipality knew or should have known of such dangerous condition of the road and you further find that such condition of the road was the proximate cause of the injuries suffered by the Plaintiff in the accident in question, you may find in favor of the Plaintiff and against the Defendants.

The parties are in agreement that this instruction is an accurate statement of Oklahoma law. The second instruction states:

A municipality has the primary duty of maintaining its streets in a reasonably safe condition for travel by the public. This duty cannot be evaded, suspended or cast upon others by any act of the municipality. This duty is nondelegable. Municipalities are liable for a breach thereof even if the damage alleged was caused by persons other than servants and employees of the municipality, such as the County employees herein.

Therefore, if the Defendant, City of Norman and Town of Noble, permitted the County of Cleveland to maintain their streets, then said city and town are liable for any negligence of the County employees or acts of the County employees while in the performance of maintenance of said roadway.

Further, you are instructed that said municipalities are liable for the negligence of the County employees while performing maintenance on said roadway even though they may have had no notice of such negligence and dangerous conditions.

Noble contends that the second instruction does not reflect Oklahoma law, conflicts with the first instruction and therefore was given in error.

The two instructions do not conflict with one another. The first instruction deals with Noble's alleged negligent maintenance of the road. The second deals with alleged negligent acts of Noble's agents in repairing the road. The Oklahoma Supreme Court has rejected the view that the city is not liable for the negligence of the entity performing the repairs. *Bannister v. Farmers Alliance Mut. Ins. Co.*, 630 P.2d 1279 (Okla.1981) (on certified questions from the federal district court in this case). In *Bannister*, the Oklahoma Supreme Court held that the city "is liable for a breach [of its duty to maintain its streets in a reasonably safe condition] even if the damage alleged was caused by persons other than servants and employees of the municipality, such as an independent contractor." *Id.* at 1281 (citations omitted). The challenged instructions deal with separate questions and both accurately reflect Oklahoma law. We find no error in the instructions given to the jury.

## III.

Noble contends that the district court abused its discretion by admitting into evi-

dence three videotapes. The district court viewed the videotapes before admitting them into evidence.

### A.

The first videotape Noble challenges is a "Day in the Life" film. Such films purport to show how an injury has affected the daily routine of its victim. Typical "Day in the Life" films show the victim in a variety of everyday situations, including getting around the home, eating meals, and interacting with family members. These films are prepared solely to be used as evidence in litigation concerning the injury. Such evidence is often desired because "films illustrate, better than words, the impact the injury had had on the plaintiff's life." *Grimes v. Employers Mut. Liab. Ins. Co.,* 73 F.R.D. 607, 610 (D.Alaska 1977). Noble argues that Bannister's "Day in the Life" videotape was unduly prejudicial within the meaning of Fed.R.Evid. 403 and thus inadmissible.

The admission of a "Day in the Life" film as evidence in a trial raises obvious dangers of prejudice to the opposing party. In *Bolstridge v. Central Maine Power Co.,* 621 F.Supp. 1202, 1203–04 (D.Me.1985), the court outlined several concerns which led it to conclude that the prejudicial impact of a "Day in the Life" film outweighed its probative value. We think the concerns expressed by the court in *Bolstridge* are instructive and we examine each in turn.

The first concern of the court in *Bolstridge* was whether the videotape fairly represented the facts with respect to the impact of the injuries on the plaintiff's day-to-day activities. 621 F.Supp. at 1203. As we have stated, "Motion pictures ... must be premised by a foundation of accuracy and fairness." *Sanchez v. Denver & Rio Grande W. R.R. Co.,* 538 F.2d 304, 306 n. 1 (10th Cir.1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). A film depicting the victim in unlikely circumstances or performing improbable tasks cannot be said to fairly portray a typical "Day in the Life" of the victim. The probative value of a film is greatest,

and the possibility of prejudice lowest, when the conduct portrayed is limited to ordinary, day-to-day situations.

The second concern of the court in *Bolstridge* was that "the fact that a plaintiff is aware of being videotaped for [the purpose of litigation] is likely to cause self-serving behavior, consciously or otherwise." 621 F.Supp. at 1203 (citing *Haley v. Byers Transp. Co.,* 414 S.W.2d 777, 780 (Mo. 1967)). This is probably inevitable to some degree in any film that is prepared specifically for trial, and it counsels against the admission of such evidence. Particularly egregious self-serving conduct raises still greater prejudice problems. For instance, when considering a filmed reenactment of the plaintiff's injuries in *Sanchez,* we wrote that "had the subject motion picture portrayed the plaintiff entering his position of peril with a look of alarm on the face of his stand-in the film should be rejected as corrupt even though otherwise accurate." 538 F.2d at 306 n. 1. Exaggerated difficulty in performing ordinary tasks presents a similar danger of prejudice. Additionally, conduct that "serve[s] little purpose other than to create sympathy for the plaintiff" is highly prejudicial. *Grimes,* 73 F.R.D. at 610 (the prejudicial effect of scenes of the plaintiff with his quadriplegic brother outweighed their probative value).

The *Bolstridge* court next recognized the dominating nature of film evidence. 621 F.Supp. at 1204. *See also Thomas v. C.G. Tate Constr. Co., Inc.,* 465 F.Supp. 566, 571 (D.S.C.1979). The concern is that a jury will better remember, and thus give greater weight to, evidence presented in a film as opposed to more conventionally elicited testimony. This, too, is a legitimate concern that must be recognized in determining the prejudicial effect of a "Day in the Life" film.

The final concern expressed by the court in *Bolstridge* was that a "Day in the Life" film could distract the jury because the benefit of effective cross-examination is lost. 621 F.Supp. at 1204. While it is true that opposing counsel will not be present to question the victim during the making of a film, this difficulty is lessened if the victim

can be cross-examined at trial regarding the events depicted in the film. Films are frequently used at trial in conjunction with live testimony. *See, e.g., Slakan v. Porter,* 737 F.2d 368, 378 (4th Cir.1984) (videotape demonstrating power of water hose shown along with the expert testimony of a fireman), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *Szeliga v. General Motors Corp.,* 728 F.2d 566, 567–68 (1st Cir.1984) (videotapes demonstrating wheels crashing into cement wall shown in conjunction with expert's testimony about cause of accident). The possibility that a film will be prejudicial is significantly reduced when the subject of that film can be cross-examined at trial.

▆▆▆ We have held that "the prejudicial effect of a videotape is to be decided on a case by case basis." *Durflinger v. Artiles,* 727 F.2d 888, 894 (10th Cir.1984). The district court must determine whether the probative value of a particular "Day in the Life" film outweighs the possibility of prejudice in light of the concerns outlined above. The judge should examine a film outside the presence of the jury in order to make this determination. The resulting decision regarding the prejudicial impact of showing the film to the jury is within the discretion of the trial court. *Id.* We will reverse that decision only if it was an abuse of discretion.

▆▆ In the present case, the district court examined the film and concluded that it accurately portrayed the daily routine of the plaintiff and that it was not unduly prejudicial. We have reviewed the film as well. The film shows Bannister getting around school, getting into his car, pumping gasoline for his car, and performing several different tasks in his home. Although there are a couple of scenes that show Bannister conducting activities that he would be unlikely to do frequently, the film as a whole demonstrates Bannister's adaptation to his injury. We hold that the district court did not abuse its discretion in admitting the film depicting a "Day in the Life" of Clifford Bannister.

**B.**

▆▆▆ Nobel next argues that the district court abused its discretion in admitting into evidence a videotape which shows a car like the one involved in the accident approaching an inclined ramp, becoming airborne, and landing. The film shows the jump three times, each time from a different angle. Bannister offered the videotape not as a reenactment, but as a demonstration showing the trajectory of this type of car with this type of suspension system. Noble argues that the film is not a demonstration but an attempted recreation of the accident and that there are substantial dissimilarities between the film event and the actual accident; thus, the film should have been excluded as unduly prejudicial.

We have approved the admission of filmed evidence "not meant to depict the actual event of the accident but rather to show mechanical principles" upon a showing that "the experiments were conducted under conditions that were at least similar to those which existed at the time of the accident." *Brandt v. French,* 638 F.2d 209, 212 (10th Cir.1981). But "[d]emonstrations of experiments used to merely illustrate the principles in forming expert opinion do not require strict adherence to the facts." *Id.* "[W]hen experiments do not simulate the actual events at issue, the jury should be instructed that the evidence is admitted for a limited purpose or purposes." *Robinson v. Audi NSU Auto Union Aktiengesellschaft,* 739 F.2d 1481, 1484 (10th Cir.1984) (citing *Brandt,* 638 F.2d at 212).

In the present case, Bannister offered the videotape not as a recreation but as a demonstration of certain principles. The district court viewed the film and then admitted it for this limited purpose. The district court instructed the jury that

> [T]he film is not being introduced for the purpose of attempting to recreate the accident involved in this case.

> The Plaintiff does not contend that the film reenacts the accident.... The film is introduced only to demonstrate certain physical principles....

You're instructed not to consider this film as a reenactment of the accident. We find no abuse of discretion.

### C.

 Noble also argues that the district court erred when it allowed Bannister to show a videotape to the jury during closing argument. The videotape was edited to show portions of the "Day in the Life" tape, the demonstration tape, and a portion of a taped deposition of one of Bannister's doctors. We first note that the district court has a great deal of discretion in controlling arguments of counsel. *Ramsey v. Culpepper*, 738 F.2d 1092, 1100 (10th Cir.1984) (quoting *Ward v. H.B. Zachry Constr. Co.*, 570 F.2d 892, 895 (10th Cir. 1978)). Furthermore, a judgment should not be set aside unless it is clear that the closing argument has unduly aroused the sympathy of the jury thereby influencing the verdict. *Ramsey*, 738 F.2d at 1100 (quoting *Julander v. Ford Motor Co.*, 488 F.2d 839, 842 (10th Cir.1973)). All of the videotapes used to make the closing argument tape had been properly admitted into evidence during the course of the trial. In addition, the district court viewed the videotape prior to allowing it to be shown to the jury. We have also reviewed the tape. We find that the district court did not abuse its discretion.

### IV.

Noble argues that the district court erred in refusing to order a new trial when Bannister's witnesses allegedly testified as to Bannister's truth and veracity. Our review of challenges to the admissibility of evidence, including character evidence, is limited to determining whether the district court abused its discretion. *Bennett v. Longacre*, 774 F.2d 1024, 1027 (10th Cir.1985). Further, if no timely objection or motion to strike is made at the time the evidence is admitted, we will reverse only if there was plain error and a substantial right of the objecting party is affected. Fed.R.Evid. 103. Here, the witnesses whose testimony is at issue were questioned about Bannister's lifestyle and activities before and after the accident to establish certain elements of damages. Noble did not object to much of this testimony. When Noble did, the objection was sustained but Noble made no motion to strike any of the preceding testimony. The admission of this testimony was not plain error. When Bannister's counsel attempted to question a witness about Bannister's truth and veracity, Noble objected and the district court sustained the objection and no answer was provided to this question. Accordingly, we find no reversible error.

### V.

We find no merit to Noble's allegation that the district court erred in failing to order a new trial on the basis of misconduct by Bannister's counsel.

AFFIRMED.