**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 25 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MAX LEE RISHELL, Curator of the
Person and Estate of KATHLEEN
LACEY, an Incapacitated Person,

     Plaintiff-Appellant,

v.

CHARLES WELLSHEAR, M.D.
    Defendant-Appellee.

No. 97-5232
(D.C. No. 94-CV-636-H)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **HOLLOWAY**, and **BALDOCK**, Circuit Judges.

**I**

This diversity suit arose out of Ms. Kathy Lacey's attempted suicide by hanging in the Jane Phillips Hospital in Bartlesville, Oklahoma, on November 22, 1990, while she was a patient on the psychiatric ward of the hospital. She survived but suffered a severe neurological injury which has left her permanently disabled and dependent on constant

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

medical care. Plaintiff, her curator,[1] brought a negligence action against the hospital and later added a malpractice claim against the defendant/appellee Dr. Wellshear, who was Ms. Lacey's psychiatrist. The hospital settled and the case went to trial in August 1997 against Dr. Wellshear only. The jury returned a verdict in favor of the doctor, and this appeal followed. Jurisdiction in the district court was based on diversity of citizenship, and we have jurisdiction under 28 U.S.C. § 1291.

## II

Kathy Lacey was a nurse and mother of three who had been diagnosed as schizophrenic, but for the most part led a normal life. Over a period of about fifteen years, she had been briefly hospitalized three or four times for psychiatric treatment. On November 21, 1990, she was very disturbed. After being involved in a one car accident that morning, she was at home with her husband when he found her in the bathroom with a pistol. Her husband telephoned the family physician and, acting on the physician's advice, took Ms. Lacey to the emergency room at the Jane Phillips Hospital.

The Lacey family had been in Bartlesville less than a year, and Ms. Lacey did not yet have a local psychiatrist. Dr. Wellshear was contacted by the family physician and met the

---

[1]Plaintiff was appointed curator of the estate and person of Ms. Lacey by a court in Louisiana, as discussed in our opinion when this case first came to us. *Rishell v. Jane Phillips Episcopal Memorial Med. Ctr.*, 12 F.3d 171 (10th Cir. 1993). In that first of two prior appeals, we reversed a dismissal for lack of diversity jurisdiction and remanded for further proceedings on that question. In a second appeal, 94 F.3d 1407, we reversed a second dismissal which had been based on the conclusion that Ms. Lacey's husband and children were indispensable parties.

Laceys at the emergency room at the hospital on November 21. Dr. Wellshear was a psychiatrist who had practiced for several years in Wichita and had moved to Bartlesville only a few months before this time. Dr. Wellshear interviewed Kathy and her husband for about thirty or forty minutes. He determined that she was psychotic and had strong "suicidal ideation." He thought she should be admitted to the hospital for an adjustment of her medication, and she agreed. She was admitted to the hospital's psychiatric unit, with orders for "close observation." Close observation meant that the staff was to check on the patient every fifteen minutes, according to Dr. Wellshear. II App. 315-16; *see also id*. at 463-64 (Nurse Thompson's testimony on "close observation or 15 minute checks").

During Ms. Lacey's brief stay on the psychiatric unit her behavior varied from withdrawn to pleasant to agitated. At one point she was heard to cry out, "It's all my fault." When asked what was her fault she replied, "The end of the world." At times she was pacing restlessly. She had difficulty sleeping the night of her admission. A nurse called Doctor Wellshear at about 1:15 a.m., and additional medication was ordered for her sleeplessness.

The next morning, Thanksgiving Day, a general practitioner came to the hospital at Dr. Wellshear's request and gave Ms. Lacey a physical exam. Her husband came by briefly and then left, after making plans to bring Thanksgiving dinner to Kathy at the hospital a few hours later. Shortly after her husband left, Ms. Lacey hung herself from the wall-mounted television stand in her private room, using her belt. A family practice physician, who was covering for Dr. Wellshear and two other psychiatrists over the holiday, was on the ward at

-3-

the time and found Ms. Lacey. He later testified that she must have been hanging five to ten minutes, based on the severity of her injuries.

There was evidence that the nurses had checked on Ms. Lacey only a few minutes before the time when she must have hanged herself. Other evidence, however, cast substantial doubt on that and strongly suggested that the time from when she had last been checked to the time she was found was at least thirty minutes.

### III

The plaintiff's primary allegations against Dr. Wellshear were that he was negligent in not ordering "constant observation" for Ms. Lacey instead of merely "close observation," in failing to communicate to the nursing staff the magnitude of the suicide risk, and in failing to order that Ms. Lacey's belt be taken from her as a suicide precaution. Constant observation would have meant, as a practical matter at this hospital, confinement in a security room monitored by a video camera. II App. 356.

The primary defenses were that Doctor Wellshear was not negligent and that the cause of the tragedy was the failure of the nursing staff to check on Ms. Lacey every fifteen minutes as Dr. Wellshear had ordered. The defendant and the defense expert, Dr. Maltsberger, testified that close observation was the appropriate recommendation, despite the tragic outcome. Among other things, Dr. Maltsberger testified that constant supervision and other aggressive techniques – including taking away belts, shoe strings, brassieres and other potentially dangerous but basic items of clothing – are rarely used now. Current theory

holds that the patient may be harmed more than helped by being bereft of personal dignity and privacy.

## IV

Plaintiff raises three principal issues in this appeal: whether it was error to give a jury instruction on the defense of supervening or intervening cause and to exclude evidence about an earlier, similar hanging suicide by a patient of the defendant; whether it was error not to instruct on Ms. Lacey's lack of mental capacity; and whether the trial court erroneously allowed the defendant to withdraw his defenses of contributory and comparative negligence after plaintiff had presented all of his evidence.

## A

We turn first to the plaintiff's argument that the trial judge erred in giving an instruction on the doctrine of supervening or intervening cause, as the defense is variously called in Oklahoma case law. The decision whether to give a particular jury instruction is within the sound discretion of the trial court, while the trial judge's legal conclusions are reviewed *de novo*. *City of Wichita v. U.S. Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996). Because plaintiff argues that it was not proper to give *any* instruction on intervening cause, the question of whether the instruction was proper under the evidence is one of federal law. *Bannister v. Town of Noble*, 812 F.2d 1265, 1268 (10th Cir. 1987).

Under Oklahoma law an intervening cause (also termed a supervening or superseding

cause) is one that is (1) independent of the defendant's primary acts or omissions constituting negligence; (2) adequate by itself to cause the plaintiff's injury; and (3) not reasonably foreseeable by the defendant. *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997). In the instant case, the intervening cause instruction told the jury that defendant contended the nurses had been negligent in failing to carry out his instructions for close observation and that they could find this to be an intervening cause if the jurors found it met the three criteria. The actual text of the instruction given is noted in the margin.[2]

---

[2]The court instructed the jury as follows:

Intervening Cause – Definition. Intervening cause is one that interrupts or breaks connection between defendant's acts or omissions and plaintiff's injury. Defendant's acts or omissions could not be the direct cause of Kathleen Lacey's injury if another [event] intervened between the two and that event was:

1. Independent of defendant's acts or omissions;
2. Adequate by itself to cause Kathleen Lacey's injury; and
3. Not reasonably foreseeable by defendant.

Defendant contends that the nurses on the psychiatric unit on the morning of Kathleen Lacey's attempted suicide were negligent and did not fulfill defendant's order that Kathleen Lacey be watched closely, and that the gap in the close observation [allowed] Kathleen Lacey to attempt to kill herself shortly after her husband left the room. In other words, defendant contends that the failure of the nurses to follow his orders was the intervening cause of Kathleen Lacey's attempted suicide.

If you find that any act or omission by one or more nurses qualifies as intervening cause, even if you find that defendant was also negligent, then his acts or omissions did not cause Kathleen Lacey's attempted suicide and he is not liable for her injury.

III Aplt. App. 607-08. The record contains only the reporter's transcription of the instruction as read by the judge. In the absence of the written instruction used by the judge, we have made the two indicated changes, based on a version of the instruction included in plaintiff's brief, in an effort to correct what appear to be errors in either the judge's reading of the instruction or the reporter's transcription thereof.

Plaintiff argues that in this particular case the defense fails to satisfy any one of the three criteria, all three of which must be present for the instruction to be proper. Plaintiff argues first that the nurses' negligence, presuming that there was negligence, was not independent of Dr. Wellshear's. Instead, plaintiff contends, any negligence by the nursing staff is clearly linked to Dr. Wellshear's alleged negligence in not communicating to the staff the severity of the suicide risk.

Second, plaintiff asserts that the negligence of the nursing staff was not adequate by itself to cause the injury to Ms. Lacey, pointing to controverted evidence that the interval between the last observation of Ms. Lacey and the time she was found hanging might have been less than five or ten minutes. Brief-in-Chief of Appellant at 9. Defense witness Dr. Hay testified that he estimated Ms. Lacey had been hanging "five to ten minutes at the most, or at least five to ten minutes, I might add." II App. 450. From this, plaintiff would have us conclude that the negligence of the staff, if any, was immaterial because even if the close observations had been carried out every fifteen minutes, Ms. Lacey would still have had time to harm herself. Brief-in-Chief of Appellant at 9. Thus, plaintiff continues, the true cause of the tragedy was Dr. Wellshear's failure to order constant observation and his failure to communicate the seriousness of Ms. Lacey's suicidal risk. *Id*. at 8-9.

Finally, plaintiff addresses the third of the superseding cause requirements, foreseeability. Focusing again on the allegation that Dr. Wellshear was negligent in not ordering constant observation and in not adequately communicating the severity of the

suicide risk to the hospital staff, plaintiff contends that failure of the staff to observe Ms. Lacey closely enough was a foreseeable consequence of Defendant Wellshear's alleged negligence; thus the giving of the instruction on intervening cause is said to have been in error.

We are not convinced that the trial judge erred in giving the disputed instruction. Questions of causation are ordinarily issues for the jury. *Bannister v. Town of Noble*, 812 F.2d at 1267. Whether there is sufficient evidence to create a question for the jury is, as we have already noted, an issue of federal law. *Id*. at 1268. When there is no evidence that would support a jury finding on an issue of required proximate, causal nexus, the question becomes one of law, and it is error to submit the issue to the jury. *Henry v. Merck & Co.*, 877 F.2d 1489, 1495-97 (10th Cir. 1989) (criminal act of defendant's employee who stole acid and threw it in plaintiff's face was a supervening cause as a matter of law); *Thompson v. Presbyterian Hospital*, 652 P.2d 260, 263 (Okla. 1982). Thus, we must determine if there was sufficient evidence that would have supported a jury finding on each of the three elements of superseding cause.

We will look at the three elements in reverse order as we review the sufficiency of the evidence to permit the trial court's submission of the intervening cause issue to the jury. On the foreseeability requirement of the supervening cause test, we disagree with plaintiff's position that negligence of the staff was, as a matter of law, foreseeable. Dr. Wellshear testified that the nurses took his order for 'close observation" and wrote in the nursing

directions: "suicidal precautions and 15-minute checks. [This] would suggest that they understood something about my order." I App. 249. Dr. Wellshear was asked about his first three weeks at Bartlesville and said he did spend time observing and making an assessment of the nurses' handling of their duties. From talking with the nurses and seeing what they did, Dr. Wellshear said he "determined that these people were well trained and some of them had many years of experience and that they attempted to keep up, at least as far as nursing approaches to psychiatric care." *Id*. at 273. Dr. Wellshear was asked if his interaction with the nurses made him feel they would look well after his patients and tend to their needs. He replied:

> Well, that opinion developed rather quickly. As I said, as I experienced the people, I became satisfied that I would have no problem in admitting patients and their being taken care of appropriately as they were in the hospitals that I had come from.

*Id*. at 275.

Thus we are persuaded there was sufficient evidence for the submission to the jury of the foreseeability issue, instead of the question of negligence by the hospital staff being held foreseeable as a matter of law. Foreseeability is ordinarily a question of fact for the jury*See Thompson v. Presbyterian Hospital*, 652 P.2d at 264.

**B**

In connection with the foreseeability point, Plaintiff Rishell also argues that there was an erroneous exclusion of evidence that Dr. Wellshear had previously had a hospitalized

patient hang himself with a belt while under close observation. Plaintiff says that the evidence was excluded by the court after a ruling on defendant's motion *in limine*, citing V App. at 683, 700. He says the evidence was directly relevant on the issue of supervening cause; that since Dr. Wellshear had a patient commit suicide in a situation nearly identical to that of Ms. Lacey, it is "incredible to contend that it was not 'reasonably foreseeable' that Kathy's injury could happen under 'close' observation"; and that the combination of the failure to permit introduction of the excluded evidence, and the giving of the intervening cause instruction was prejudicial error. Brief-in-Chief of Appellant at 10-11.

Despite the appearance of logic in the point about the excluded evidence, plaintiff's claim of error may not be reviewed on this record. We have examined the record citations given in plaintiff's brief and related portions of the record. (V App. 683, 696-97, 700-701, 715-16, 909.) They contain Dr. Wellshear's motion *in limine* and his argument that "such evidence is inadmissible hearsay and must be excluded." *Id*. at 696. We have examined Plaintiff Rishell's response below in opposition to the motion *in limine* and the argument that plaintiff intended to offer evidence concerning these prior patients that Dr. Wellshear had, that the similarities are alleged to be "chilling" about a "potentially suicidal patient who he placed in a hospital for observation," and that that patient committed suicide by hanging from a shower rod with a belt. *Id* at 716. The final reference we find in the record to the motion is in the clerk's minutes of pretrial conference rulings that evidence at issue in the motion *in limine* is "out" but that as to "#3–pltf. may re-urge it later." V App 909. (The evidence of any

-10-

other suicide by any patient of Dr. Wellshear was the third item in the defendant's motion *in limine*.)

We find that plaintiff has not shown that this claim of error is reviewable. As noted, the clerk's minutes state, in summarizing the judge's rulings at a pretrial conference on July 24, 1997, in a statement appearing to deal with this excluded evidence, that items 1 and 2 were "out" and that "item #3– pltf. may re-urge it later." At best from plaintiff's view, the judge made a ruling excluding the evidence which was tentative, with reurging of the offer being contemplated. In any event, plaintiff has not shown that the trial judge's ruling was definitive and that the evidence in question was unconditionally excluded. Under these circumstances a reviewable issue has not been presented to us. The evidence has not been tendered by an offer of proof as required by Fed. R. Evid. 103(a)(2). We are mindful that we have held that a claim of error of this sort based on the exclusion of evidence may be preserved for appeal by a motion *in limine* even where a party fails to object or make an offer of proof at trial if (1) the matter was adequately presented below; (2) the issue was of a type that can be decided prior to trial; and (3) "the court's ruling was definitive." *Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1193 n. 10 (10th Cir. 1997). An offer of proof may not be necessary if the offer in response to a motion *in limine* was adequate and the court unconditionally excluded the evidence by granting the motion.

An offer of proof may still be necessary, however, to preserve the issue for appeal if a motion *in limine* is granted but (1) the offer of proof in response to the motion was

inadequate; (2) the court's ruling granting the motion *in limine* was "tentative or qualified"; or (3) if circumstances change. 1 Jack B. Weinstein & Margaret A Berger, *Weinstein's Federal Evidence* § 103.21 [2] at p. 103-40 (Joseph M. McLaughlin, ed., 2d ed. 1999). Since the ruling here appears to have been tentative or qualified, and the judge is not shown to have unconditionally excluded the evidence, the issue was not preserved for review on appeal.

## C

On the second element of the supervening or superseding cause issue, we hold that it was for the jury to determine whether the alleged negligence of the hospital staff was adequate by itself to cause the injury to Ms. Lacey. Plaintiff Rishell argues to the contrary that the negligence of the hospital was not adequate by itself to bring about the injury; assuming the nurses were completing the 15 minute checks, Ms. Lacey could still have caused her injury; there was evidence from Dr. Hay (the family physician covering for Dr. Wellshear, who found Ms. Lacey hanging in her room) that he believed she had been hanging less than 5 to 10 minutes (Brief-in-Chief of Appellant at 9);[3] that since the hanging could have occurred even if the nurses were doing the 15 minute checks, the negligence of the nurses does not meet the requirement that a supervening cause must be adequate by itself to cause the injury to Ms.

---

[3]Dr. Hay said he opened the door to Ms. Lacey's room and could see her hanging from the television set. He was asked how long he would estimate she had been hanging, and replied: "The only kind of estimate I could really make is from the condition that developed later. It would be five to ten minutes at the most, or at least five to ten minutes, I might add." II App. at 450.

-12-

Lacey. *Id.*

We are not persuaded by the Plaintiff Rishell's argument. Dr. Wellshear was asked about possible negligence by the nurses and not keeping a 15 minute watch, and he replied: "There seems to be some problem with the time between 9:10 and 9:45 as far as evidence of close observation being performed by the nurses." II App. at 242. He also commented that the "only other issue was the door being closed when Dr. Hay opened it when he was making rounds." *Id.* at 243. Mr. Lacey testified that it took about ten minutes for him to get from the hospital to his office, and its records show he entered at 9:20 that morning. I App. at 197.

Dr. Maltsberger, the defense psychiatric expert witness, was asked if he was now (at trial time) critical of the nurses for not keeping 15 minute checks. He replied: "Well, you know, there is some reason to believe that they did not." III App. at 567.

We are obligated to view the evidence in the light most favorable to the verdict. The jury could have found that Ms. Lacey had not been observed for more than 15 minutes, and such negligence by the nurses could be viewed as adequate by itself to cause the injury.

Plaintiff relies on Dr. Hay's testimony that the injuries sustained by Ms. Lacey were consistent with deprivation of oxygen for a period of five minutes but not longer than ten minutes. Plaintiff thus asserts that only constant observation could have prevented Ms. Lacey's suicide attempt, since the act could have been accomplished in such a short time. The jury could well have found, however, that in fact Ms. Lacey had been left unobserved for some thirty minutes. We cannot say as a matter of law that, had the jury so found, such

-13-

negligence would not have been adequate by itself to cause the injury. We also note that plaintiff's argument assumes that the time necessary for Ms. Lacey to hang herself was negligible, as plaintiff addresses only the length of time necessary to cause the extensive brain injury once she had performed the act. Plaintiff points to no evidence to support this assumption, and we of course restrict ourselves to facts established in the evidence. Thus, we will not assume, and the evidence did not show, that the combined time necessary for Ms. Lacey to have secured the belt to the television stand and fixed it around her neck, plus the five to ten minutes necessary for the hanging to produce the resulting injuries, totaled less than fifteen minutes.

Finally, we must consider plaintiff's contention that the staff's negligence was not independent of Dr. Wellshear's negligence but instead a direct result of his negligent failure to communicate the severity of the suicide risk. The answer to this assertion is that the jury could have found that the defendant did not fail to communicate the severity of the risk to the staff. There was ample evidence from which the jury could have drawn that conclusion, for example Dr. Wellshear's testimony, cited above, about the nurses understanding the seriousness of the suicide risk and Dr. Maltsberger's expert testimony for the Defendant. III Aplt. App. 546-47.

In sum, we conclude and hold that the trial judge did not err in giving the challenged instruction on intervening cause.

**D**

-14-

Next we consider plaintiff's contention that the jury should have been instructed that Ms. Lacey could not be held to have been negligent if the jury found that she was "insane or incompetent" at the time of her injury. The instruction requested by the plaintiff is noted in the margin.[4] Defendant counters by arguing that there was no evidence that Ms. Lacey had been negligent, nor was any such suggestion made to the jurors by counsel for the defendant either in opening or in closing remarks.

Plaintiff's requested instruction is expressly premised on defendant having put the matter in issue by contending that Ms. Lacey was negligent. This is not the case. (See discussion in part IV-E, *infra.*) Because there was no contention that Ms. Lacey was negligent, there can be no error in failing to give the requested instruction.[5]

---

[4]The requested instruction stated:
"Defendant Wellshear contends Mrs. Lacey was negligent in this case. Plaintiff contends Mrs. Lacey was not negligent because she was legally incompetent due to her mental illness. Under the law, a person cannot be held negligent if they are incompetent. A person is incompetent if they lack the ability, knowledge or fitness to carry out their duty or obligation. A person is incompetent if they are suffering from a mental illness which causes them to be permanently or temporarily insane. Insanity does not mean total deprivation of reason, but an inability, from defect of perception, memory and judgment, to do the act in question or to understand its nature and consequences.
        "Therefore, if you find Mrs. Lacey was insane and/or incompetent at the time of her attempted suicide, then you must find that she was not negligent."
V App. 744.

[5]Review of the record demonstrates that counsel for the defense was very cautious in their approach to this topic and, in fact, scrupulously avoided even the appearance of casting blame on Ms. Lacey. Furthermore, there is nothing in any of the instructions given to the jury that would have suggested that they might find Ms. Lacey herself responsible for her injuries.

-15-

**E**

In his last proposition, plaintiff contends that he was prejudiced by the defendant's alleged last minute withdrawal of the defenses of comparative and contributory negligence. This contention merits little discussion. Plaintiff has cited no authority that would support the proposition, implicit in his argument, that a defendant in a civil case is under some kind of obligation to present evidence to support each defense listed in the pretrial order.[6] Indeed, we are not cited to any authority which holds that a civil defendant has any obligation to present any evidence whatsoever.

Nevertheless, plaintiff asserts that his case was severely and unfairly prejudiced because he had presented evidence of negligence on the part of the hospital, only to be faced with the defense that the hospital's negligence was the superseding cause of the injury, as we have discussed in part IV-A. Plaintiff asserts that "fundamental fairness" required that defendant, knowing that the defenses asserted would shape the plaintiff's case at trial, should withdraw the defenses at the beginning of trial, if they wished to do so.

Defendant points out that he did not assert a contributory/comparative negligence defense in the pretrial order, nor did he request a jury instruction on either comparative or contributory negligence. Finally, defendant argues that the existing authority, while sparse,

---

[6]Undaunted by their inability to produce any authority to support this proposition, counsel for plaintiff assert that we should review the district court's decision to "permit" withdrawal of the defense under a *de novo* standard. We disagree. Issues regarding the presentation of evidence and the conduct of the trial are within the broad discretion of the trial judge.

-16-

supports the right of the defense to choose its own theories. *See e.g., Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1486 (11th Cir. 1997). Indeed, the circumstances of *Goulah* are somewhat analogous to those of the instant case. The defendant in that products liability action had raised a defense of comparative negligence, which it withdrew only at the close of all the evidence. The plaintiff in that case argued that by withdrawing the comparative negligence defense, Ford had waived the right to argue that it was the plaintiff's own conduct that had caused the accident. Both the trial court and the appellate court disagreed, and so do we. The Eleventh Circuit decided the case under Florida law, but we are not aware of, and plaintiff certainly has not cited any, authority that the issues have been decided differently in other jurisdictions.

Because defendant here had not raised comparative negligence in the pretrial order, nor in his requested jury instructions, we are not impressed with plaintiff's assertion that he was unfairly surprised by a last minute change of defense strategy. We certainly see no abuse of the district court's discretion in the conduct of the trial and admission of evidence on this issue.

## V

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

Entered for the Court

William J. Holloway, Jr.

-17-

Circuit Judge