**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHEMICAL WEAPONS WORKING
GROUP, INC.; SIERRA CLUB;
VIETNAM VETERANS OF
AMERICA FOUNDATION,

      Plaintiffs - Appellants,

v.

UNITED STATES DEPARTMENT
OF DEFENSE; UNITED STATES
DEPARTMENT OF THE ARMY;
EG&G DEFENSE MATERIALS,
INC.,

      Defendants - Appellees.

No. 00-4110
(D.C. No. 2:96-CV-425-C)
(D. Utah)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **McWILLIAMS** , and **LUCERO** , Circuit Judges.

The appellants are three non-profit public interest groups. The appellees

are two federal agencies and a corporation retained by the Department of Defense

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

to operate a chemical agent disposal facility. The appellants brought suit under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972, and other environmental statutes in federal district court, seeking legal and equitable relief based on alleged violations at the facility. After a bench trial, the district court dismissed the action. We exercise jurisdiction under 28 U.S.C. § 1291 and, for the reasons described below, affirm.

## I. BACKGROUND

The appellees jointly operate the Tooele Chemical Agent Disposal Facility (TOCDF) in Tooele, Utah. TOCDF destroys dangerous chemical agents, using a variety of monitoring and alarm systems to prevent those agents from migrating to unsafe areas within the facility and from escaping into the atmosphere in dangerous concentrations. In denying preliminary injunctive relief, we described in some detail the technical and historical facts relevant to this case. *See Chemical Weapons Working Group, Inc. v. United States Department of the Army*, 111 F.3d 1485 (10th Cir. 1997), *aff'g* 935 F. Supp. 1206 (D. Utah 1996); s*ee also Sierra Club v. Utah Solid and Hazardous Waste Control Bd.*, 964 P.2d 335 (Utah Ct. App. 1998). We therefore need not repeat those facts here.

In their initial complaint and three amended complaints, the appellants alleged that the operations at TOCDF violated various environmental statutes.

-2-

The appellants alleged that violations occurred from 1996 to 1999 and asserted generally that environmental harm would continue in the future. After a bench trial that included extensive expert testimony (most of which was offered by the appellees), the district court issued a judgment that included fifteen pages of findings of fact along with conclusions of law. The district court concluded that "the evidence at trial established that no agent-related injuries have been sustained and no agent has been released into the environment outside TOCDF." Aplts' App. at A-378 (Dist. Ct. Order, filed Apr. 14, 2000). The appellants assert that the district court erred in: (A) dismissing claims under 42 U.S.C. § 6972(a)(1)(A) as "wholly past," (B) dismissing claims under 42 U.S.C. § 6972(a)(1)(B) as not posing an imminent or significant danger, (C) making inadequate findings under Fed. R. Civ. P. 52, (D) failing to consider certain "admissions" by appellees, and (E) failing to draw adverse inferences from the appellees' failure to submit certain evidence during trial. [1]

---

[1]    We note with disappointment that–of the five issues asserted on appeal–the appellants' brief provided a standard of review only for the fourth of those issues. *See* Fed R. App. P. 28(a)(9)(B).

We also feel compelled to point out that the appellants cited at least one unpublished opinion in their brief. *See* Aplts' Br. at 43 (citing *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service Inc.*, 1998 WL 68879 (10th Cir. Feb. 20, 1998)). As our rules specify, citation to unpublished cases is disfavored. *See* 10th Cir. R. 36.3(B) (specifying two circumstances under which unpublished opinions may be cited, neither of which apply here). Having chosen to violate that rule, the appellants then failed to attach a copy of the unpublished opinion to

(continued...)

# II. ANALYSIS

On appeal from a bench trial, we review de novo the district court's conclusions of law. *Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 (10th Cir. 1999). But unsurprisingly, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed. R. Civ. P. 52(a). "[R]eview under the 'clearly erroneous' standard is significantly deferential." *Concrete Pipe & Prods. of Cal. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993).

## A. "Wholly Past" Violations

The appellants assert that the district court erroneously dismissed four of their claims for failing to meet the standards set forth in RCRA, which authorizes citizen suits against "any person (including (a) the United States, and (b) any other governmental instrumentality or agency . . .) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition,

---

[1](...continued)
the document in which it was cited, in violation of 10th Cir. R. 36.3(C).

or order which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)(1)(A).

The wording of this and other environmental statutes–specifically, the phrase "is alleged to be in violation"–creates some uncertainty as to whether the violation must be ongoing at the time of the allegation. In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987), the Supreme Court addressed this issue in the context of the Clean Water Act, 33 U.S.C. § 1365(a). 484 U.S. at 56. There, the Supreme Court interpreted "alleged to be in violation" to require that appellants allege a state of "continuous or intermittent violation." *Id.* at 57. "Wholly past violations" are not covered by the phrase, and citizen suits for wholly past violations are therefore not authorized by the statute. *Id.* at 64. The Court noted that identical language was used in RCRA. *Id.* at 57.

The district court observed that the Tenth Circuit has not yet addressed the question of whether the "wholly past" doctrine applies to RCRA; but it pointed out that every other circuit to have addressed the issue (and every district court in the circuits that have not addressed the issue) has held that *Gwaltney* applies to RCRA. Aplts' App. at A-394 to A-395; *id.* at A-395 n.13. The appellants here, in fact, do not dispute *Gwaltney*'s applicability to their RCRA claims. We therefore need not address that issue, and we assume that the legal standard

employed by the district court now constitutes the law of the case. *See, e.g., Coca-Cola Bottling Co. of Ogden v. Coca-Cola Co.*, 4 F.3d 930, 933 n.3 (10th Cir. 1993).

The appellants argue instead that the claims rejected by the district court were not wholly past violations. They claim that the violations could not have been wholly past because none of them had yet occurred as of the filing date of an *earlier* version of their complaint. *See* Aplts' Br. at 31-35. That is, in their second amended complaint, the appellant's alleged in general terms that violations were likely to occur in the future. The appellants then waited until–as is all but inevitable in an imperfect world, and under the overlapping safety systems in place at TOCDF–an alarm went off, at which point they filed their third amended complaint. They now attempt to insulate themselves from *Gwaltney* by noting that their second amended complaint was filed on a date before the violation, and they justify their lack of specificity therein by noting that they are not "psychic" and thus could not predict the exact date of the violation. *Id.* at 31.

The appellants misconstrue *Gwaltney*, where the Court understood that a plaintiff's case might be frustrated by a "suddenly repentant defendant," 484 U.S. at 67 n.6, one who predictably begins to comply with the law only after the onset of the litigation. Here, by contrast, the appellants argue that their predictions of

future violations in one iteration of their complaint were borne out years later and were then included in a later iteration of their complaint. This, the appellants seem to suggest, prevents the specific violation from ever being deemed "wholly past," because it was not "past" when they predicted it in their earlier complaint.

This is an inventive argument, but it is ultimately unpersuasive. The district court was simply correct in determining that the alleged violations are neither continuous nor intermittent violations. All of the appellants' specific claims involved discrete past incidents of alleged misconduct–incidents that were, we note, followed not only by efforts to assess whether any damage was done, but also by improvements in the facility's procedures to prevent even those (thankfully) harmless violations from occurring again. These violations, therefore, are "wholly past" in the sense that the *Gwaltney* court used the term: violations that have ceased, *not* because of the onset of litigation but because the defendants had already corrected what they were doing.[2]

---

[2]     The appellants also reassert a separate claim that the appellees violated relevant permit requirements by not including the private contractor EG&G on the original permit. Appellants are correct that *Gwaltney* does not apply to this claim, because the violation was ongoing when the original complaint was filed (and the original complaint specifically alleged this violation). In a separate proceeding, the district court dismissed this claim on the grounds of collateral estoppel. *Chemical Weapons Working Group, Inc. v. U.S. Dept. of the Army*, 990 F. Supp. 1316, 1320 (D. Utah 1997). Subsequently, the Utah Court of Appeals held that–although the Utah Solid and Hazardous Waste Control Board erred in concluding that EG&G did not need a permit–the Board

(continued...)

**B.      Imminent or Significant Danger**

The Act also authorizes citizen suits "against any person, including the

United States . . . who has contributed . . . to the past or present handling, storage,

treatment, transportation, or disposal of any solid or hazardous waste which may

present an imminent and substantial endangerment to health or the environment."

42 U.S.C. § 6972(a)(1)(B).       The appellants assert that the district court erred in

requiring them to prove that the appellees' actions "present an imminent and

substantial endangerment to health or the environment" because this phrase

in RCRA is prefaced by the word "may."  According to the appellants, the word

"may" in this sentence allows for allegations of potential or future harm, such that

a showing of actual harm is not required.  *See* Aplts' Br. at 19-21; *Dague v. City*

*of Burlington*, 935 F.2d 1343, 1355 (2d Cir. 1991) (stating that "may" is

"expansive language").

That the district court omitted the word "may" in its order does not,

however, demonstrate that it applied a test requiring actual current harm, as the

---

[2](...continued)
was not unreasonable in declining to punish EG&G for the violation.  *See Sierra*
*Club*, 964 P.2d at 346.  Therefore, the appellants are estopped from relitigating
the issue in search of a different remedy.  *See Harline v. Barker*, 912 P.2d 433,
442 (Utah 1996) ("Issue preclusion prevents the relitigation of issues that have
once been adjudicated even though the claims for relief in the separate actions
may be different.")

appellants claim. Rather, the district court's language suggests that it was thinking not only about harm that had occurred, but about the possibility that harm would occur in the future. In its discussion of the § 6972(a)(1)(B) claims, for example, the district court discussed safety measures implemented "to prevent similar incidents from occurring." Aplts' App. at A-396.

Moreover, although such a reading of the statute implies future orientation, that orientation cannot be very far into the future. "Imminent" harm by definition will occur almost immediately if action is not taken to prevent it. *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996). A vague possibility of future harm cannot satisfy the statute, which applies to dangers that are both "imminent and substantial." 42 U.S.C. § 6972(a)(1)(B). For example, the appellants assert in their third amended complaint that "it is expected that such incidents will continue to occur," Aplts' App. at A-361, an open-ended allegation that simply does not satisfy the standards in RCRA. Finally, although the appellants cite caselaw from other circuits, they do not cite the more recent *Meghrig* decision, where the Supreme Court held that "[a]n endangerment can only be imminent if it threaten[s] to occur immediately[, which] implies that there must be a threat which is present *now,* although the impact of the threat may not be felt until later." *Id.* at 485-86 (quotations omitted).

The appellants' argument, if adopted, would threaten to convert RCRA into a strict liability statute. However, Congress expressly limited citizen suits to cases of "imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). We agree with the district court that the appellants did not show imminent danger and that their claims therefore lacked merit.

## C.      Adequacy of Findings

The appellants assert that the district court failed to rule on and/or did not make adequate findings with respect to various claims, in violation of Fed. R. Civ. P. 52(a). That rule does not, however, require "elaborate and detailed findings and conclusions." *Woods Constr. Co. v. Pool Constr. Co.*, 314 F.2d 405, 406 (10th Cir. 1963). In a case as complex as this one, made more difficult by the length of the various complaints, the district court should not be required to respond to every specific factual allegation made by the appellants.[3] Some issues are sufficiently disposed of in general terms. *See, e.g.*, *Anthony v. Texaco, Inc.*, 803 F.2d 593, 600 (10th Cir. 1986) (approving lack of specific findings were "the

---

[3]      We do not, of course, intend to condemn the appropriate use of the procedure to amend complaints. *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"). Nor do we suggest that lengthy complaints are never necessary. We do, however, find the various iterations of the appellants' complaint here to be needlessly confusing and overlapping–especially given the appellants' attempt to rely on different versions of their complaint to support their legal argument.

record on appeal supports the court's order and indicates the court heard evidence on each element"). We hold that the findings and conclusions of the district court were "sufficiently detailed and exact to permit an intelligent review." *Med. Dev. Co. v. Ind. Molding Corp.*, 479 F.2d 345, 349 (10th Cir. 1973).

**D.    Failure to Consider Appellees' "Admissions"**

The appellants further claim that the district court failed to consider certain "admissions" by the appellees. We note initially that some of the supposed "admissions" involve possible harm to workers at the facility. The appellants lack standing to make these claims because no TOCDF worker is a named plaintiff and appellants have demonstrated no direct injury to themselves. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 181–82 (2000). Other "admissions" involve instances when trace amounts of agent migrated into different areas of TOCDF, the implications of which are certainly open to plausible alternative interpretations. The appellants point to nothing in the record that would indicate that the district court's interpretation of these "admissions" was implausible–especially given that the migrations were *within* the plant and thus do not unequivocally evidence a danger to the public. Accordingly, the district court did not clearly err in concluding that these "admissions" did not involve substantial harm to health or the environment.

**E.      Failure to Draw Adverse Inferences**

Finally, the appellants argue that the district court erred in not drawing an adverse inference from the appellees' failure to offer into evidence at trial the results of laboratory tests of certain air monitoring devices in the facility. The appellants assert that the report was listed as an exhibit in the pre-trial order but was "not offered at trial after Plaintiffs' counsel . . . elicited admissions from Defendants' employees that . . . the chain of custody was intentionally not maintained when it could have been." Aplts' Br. at 42. The appellants argue that the district court "should have drawn an adverse inference to the effect that . . . the results would have confirmed that a [violation occurred]." *Id.* at 43.

The appellants' cited authority on this point is inapposite. They first cite *Ready Mixed Concrete v. National Labor Relations Board*, 81 F.3d 1546 (10th Cir. 1996), where we simply approved of the NLRB's use of the adverse inference rule and noted in passing that the rule had also been applied in other civil contexts. *Id.* at 1552. Moreover, in that opinion we cited with approval a case from a sister circuit for the proposition that the "decision whether to draw the adverse inference lies with the factfinder." *Ready Mixed Concrete*, 81 F.3d at 1552 (citing *United Auto Workers Int'l Union v. National Labor Relations Board*, 459 F.2d 1329, 1339 (D.C. Cir. 1972)). The factfinder here was, of course, the

court itself, which makes the appellants' citation to another of our cases still more confusing. In *Gilbert v. Cosco, Inc.*, 989 F.2d 399 (10th Cir. 1993), we reviewed a trial court's decision not to instruct a jury on the adverse inference rule. We noted that the adverse inference rule merely *permits* a jury to draw adverse inferences, *id.* at 405, and we approved the judge's decision not to accept the plaintiffs' proposed jury instruction on adverse inferences. *Id.* at 406. Most importantly, we stated that the adverse inference rule should only be invoked when, among other requirements, "the evidence is available to the suppressing party, but not to the party seeking production [and] it appears that there has been actual suppression or withholding of evidence." *Id.*[4]

We thus find no error in the district court's determination that the appellees' failure to present certain evidence did not mandate a verdict for the appellants. The appellants possessed and could have offered into evidence the appellee's documentation of that analysis. Their decision not to do so cannot constitute error on the part of the district court.

---

[4] Even the unpublished case to which the appellants refer, *Jordan F. Miller Corp. v. Mid-Continent Aircraft Service Inc.*, 1998 WL 68879 (10th Cir. Feb. 20, 1998), notes that "an adverse inference instruction would not have been appropriate [where] there was no evidence of bad faith." *Id.* at **7.

\* \* \*

We are cognizant of the serious nature of the appellants' allegations in this case. It is understandable that people living near TOCDF would be worried about the possibility of poisonous gases escaping into their immediate environment. Therefore, it is entirely appropriate to scrutinize carefully the activities at TOCDF and similar facilities , and to deal with violations properly. The issues that the appellants raise on this appeal, and the laws and precedents under which we must evaluate those issues, however, clearly require us to affirm the district court's ruling.[5]

### III. CONCLUSION

For the reasons discussed above, we AFFIRM the district court's judgment for the appellees and its dismissal of the cause of action.

ENTERED FOR THE COURT

Robert Henry
Circuit Judge

---

[5] We note also that a complaint relying on a more appropriate environmental statute might have better served the appellants' apparent purposes. "Unlike the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." *Meghrig*, 516 U.S. at 483 (citation omitted).